249 S.W.2d 477 (1952)
GARBO
v.
P. M. BRUNER GRANITOID CO. et al.
No. 28386.
St. Louis Court of Appeals, Missouri.
May 20, 1952.
Rehearing Denied June 27, 1952.
Albert I. Graff, Courtney S. Goodman, and Malcolm I. Frank, all of St. Louis, for appellants.
Ralph H. Schnebelen, of St. Louis, for respondent.
BENNICK, Presiding Judge.
This is an appeal by the employer and insurer from the judgment of the Circuit Court of St. Louis County reversing an award of the Industrial Commission in a proceeding under the Workmen's Compensation Law, Sections 287.010-287.800 RSMo, 1949, V.A.M.S.
The whole question in the case is whether the injury was by accident arising out of and in the course of the employment. If so, it was compensable, and otherwise not.
The claim was by one Joseph Garbo, an employee of P. M. Bruner Granitoid Company, a corporation with its principal place of business in the City of St. Louis where Garbo and the other employees resided.
In August, 1949, the employer was under contract to do a driveway job in Wright City, a small town about 50 miles west of St. Louis on Highway 40. The work was *478 scheduled to commence on Wednesday, August 24th, and six men were assigned to the job, including Garbo and one Nanwiler, who acted as foreman. R. W. Bruner, the president and chief executive officer of the employer, was also on the premises from time to time during the progress of the work.
There was but very little dispute in the evidence, and that largely in regard to the understanding of the parties.
Some few days before commencing the work, Bruner informed the men about the Wright City job and made arrangements with them for their means of transportation. Nanwiler, the foreman, was to go in the employer's own truck, while the others were to ride with Garbo in his car which he voluntarily agreed to furnish. Garbo testified that when the use of his car was first discussed, he inquired of Bruner as to who would pay the expense, and was told, without elaboration, that Bruner would bear the expense. Bruner denied any such conversation, and insisted that the only inquiry he had had from Garbo was whether he would pay for board and room while the men were detained in Wright City, to which he had readily assented. At any rate, Garbo concededly furnished his car with Bruner's acquiescence, and used it to transport himself and four fellow employees out to Wright City on the morning of Wednesday, August 24th. In addition, he carried along a few odd tools which belonged to the employer and which Bruner desired to have taken out to the job.
The men worked through Wednesday, Thursday, and Friday, and at the end of the day's work on Friday, August 26th, a question arose as to whether they should return to their homes in St. Louis over the week end. The job had not been completed, and work was not to be resumed until the following Monday morning. Bruner gave the men their choice of either returning home or of staying in Wright City, where, if they remained, he would pay their room and board over the week end amounting to approximately $54. Notwithstanding the saving to be effected if the men returned to St. Louis to be with their families, Bruner testified that it would have been better for him "in one way" if they had remained in Wright City so as to be available for starting work promptly rather than to run the risk of having something happen that might cause them to be late in reporting back on the job. Given their choice, the men elected to return to St. Louis; and after inquiring if Garbo would take them in, Bruner admonished them to arrange among themselves for their transportation back to Wright City for the resumption of work on Monday morning. All six men went in Garbo's car; and when they had reached a point about twelve miles out of St. Louis, a highway accident occurred in which Garbo received the injury for which he has sought to be compensated in this proceeding.
Under the terms of the employment the men were entitled to pay from the time they left St. Louis on Wednesday morning for their trip to Wright City where the actual work was to be done. In other words, the first day's service included the time occupied in driving from St. Louis out to Wright City. The regular day's work was from 8:00 o'clock in the morning until 4:30 o'clock in the afternoon. No pay was forthcoming for Saturday and Sunday, during which no work was to be performed; and of course no pay was being earned during the period of the trip back to St. Louis, which was after working hours.
None of the men who rode with Garbo contributed anything towards the expense of the operation of his car, nor had he actually received any reimbursement from the employer.
We have already mentioned the variation between Garbo's own testimony and that of Bruner regarding any prearrangement that Bruner should bear such expense. However all the testimony was in agreement that the matter was discussed shortly before quitting time on Friday, August 26th, the day of the accident.
Garbo testified that he was present during a conversation between Nanwiler and Bruner, when Nanwiler had suggested that Bruner should allow Garbo money for his gasoline, and Bruner had replied that Nanwiler should take care of such obligation *479 out of money he then had on hand. What Bruner had in mind was money advanced to Nanwiler to cover the expense of meals and the like. Bruner had personally paid the charge for the tourist cabins which had been engaged for living quarters. Bruner admitted his direction to Nanwiler to allow Garbo something for gasoline, but was uncertain whether Garbo had overheard the conversation. Nanwiler's own recollection was that he had asked Bruner about the payment of Garbo's expenses, and that Bruner had told him to take care of the matter at the time Garbo was paid for his work. He had then told Garbo that he would be reimbursed for what he had spent for gasoline. He explained, however, that what had been meant was only that Garbo would be paid his expenses incurred in bringing the men out from St. Louis to Wright City and in taking them back to St. Louis when the job was completed.
After a consideration of the evidence thus adduced, the referee found that Garbo's injury was by accident arising out of and in the course of his employment, and was therefore compensable under the act.
The employer and insurer thereupon made application for review before the Industrial Commission, which found, contrary to the referee, that Garbo had failed to prove that his injury had been by accident arising out of and in the course of his employment. A final award was consequently entered in favor of the employer and insurer, denying the claim for compensation.
From this decision Garbo appealed to the circuit court, which found, as had the referee, that the injury was by accident arising out of and in the course of the employment, and upon the basis of such finding rendered judgment that the final award of the Industrial Commission be reversed and the cause remanded for further proceedings in accordance with such judgment.
The employer and insurer thereupon gave notice of appeal; and by proper successive steps have caused the case to be transferred to this court for our review.
Regardless of the form employed by the Industrial Commission in stating its decision, that is, that Garbo had failed to prove that his injury was by accident arising out of and in the course of his employment, its language is not to be taken as merely implying that Garbo had failed to make out a prima facie case, but rather as constituting an affirmative finding against Garbo and in favor of the employer and insurer on the whole evidence. Doughton v. Marland Refining Co., 331 Mo. 280, 53 S.W.2d 236; Wright v. Penrod, Jurden & Clark Co., 229 Mo.App. 1147, 88 S.W.2d 411. In reversinng such award, the circuit court, being without the power to substitute its own judgment on the evidence for that of the Commission, must necessarily have held that the Commission's finding was not supported by competent and substantial evidence upon the whole record, Art. V, Sec. 22, Const. of 1945, V.A.M.S., Const.; and it is our task upon appeal from the judgment rendered by the circuit court to determine whether there was a basis in the whole record to justify the court in reaching such conclusion.
Generally speaking, an injury sustained by an employee while going to and from his work is not compensable for the reason that it may not be said to be by accident arising out of and in the course of his employment. In other words, the trip to and from one's place of work is merely an inevitable circumstance with which every worker is confronted and which ordinarily bears no immediate relation to the actual services to be performed. If a worker is to do the task for which he is employed, he must of course present himself at his place of work at the appointed hour; and when his day's work is over, the is no longer subject to his employer's direction and control but is free to return to his home or do anything else that may happen to suit his own personal convenience.
However all this may be modified by circumstances and situations such as we have in the case at barwhere, for instance, the work consists of an out-of-town job, or, if not an out-of-town job, is in any event to be done at a location so far removed from *480 the homes of the employees as to make it expedient for the employer to furnish his employees with transportation to and from their work. In all such cases it is the scope of the contract of employment that furnishes the determinative test of whether the transportation is to be regarded as incident to the employment. If the right to transportation, or the right to reimbursement for the expense of the operation of the employee's own car, is given the employee by the terms of his contract, and his injury is received in connection with such transportation, then his injury is by accident arising out of and in the course of his employment, and is therefore compensable under the act. But on the other hand, if the transportation is not furnished by the employer but is provided by the employee himself for his own personal convenience, it amounts to no part of the employment, and any injury received in the course of such transportation will afford no basis for compensation. Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563; Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497.
So in this case, if Garbo had been injured on the initial trip out to Wright City, or if, had he remained on the job until its completion, he had been injured on the way back to St. Louis, the employer and insurer would admit his right to compensation. Even if we assume the absence of any prearrangement with Bruner that he should be reimbursed for the expense incurred in the operation of his car, an understanding to that effect was in any event reached before quitting time on Friday afternoon, so that for this and other reasons transportation to and from the job was unquestionably contemplated by the contract of employment. Indeed it was so much a part of the employment that Garbo's pay began to run from the time he left St. Louis on the very day the work was commenced. During the period of such transportation he was engaged in the business of the employer, and was subject to its supervision and control.
But unfortunately for Garbo, he was not injured on the initial trip out to Wright City, or upon a trip back to St. Louis after completion of the job. On the contrary, his injury was received during the interval between the end of work on Friday and the resumption of work on the following Monday, while on a mission of his own (to be with his family over the week end), which had no direct relation to his actual employment. While the fact that his employment took him out to Wright City would have made it necessary that he return to St. Louis when the work was done, it did not require him to be on his way back to St. Louis upon the occasion of the accident. That trip, however understandable, was purely one of his own choice and for his own private purpose and convenience. Granting that Bruner gave his consent to the journey back to St. Louis, he would actually have preferred otherwise; and the mere circumstance of the saving of $54 because of the action the men elected to take of their own volition did not in anywise alter the real purpose of their trip or affect the relationship of the parties while it was being carried out. It is true that after the men had expressed their choice, Bruner admonished them about the necessity for arranging among themselves for their return; but how they should proceed in carrying out his suggestion was still a matter for them to decide, and over which he possessed no right of control.
Garbo of course places great reliance upon the fact that Bruner had agreed to make him an allowance for the expense incurred in operating his automobile. If Bruner had agreed to bear the expense of the very trip which was in progress when the accident occurred, there might be better reason for urging such fact as a ground for imposing liability. However the court could in no event substitute its own judgment on the evidence for that of the Commission, whose special province it was to find the facts upon which the result depended. In other words, the question for the court to decide is not whether the Commission might conceivably have found other than it did, but of whether the decision it actually reached was supported by competent and substantial evidence upon the whole record in the sense that the Commission could reasonably have made its *481 finding and have reached its result upon consideration of all the evidence before it. What the Commission obviously found, as it had the right to do, was that Bruner was only to bear the expense of the initial trip out to Wright City and of the trip back to St. Louis when the work was completed. It was this transportation, and this alone, which was contemplated by the contract of employment, and not a trip such as Garbo was making at the time his injury was received.
As we view the record, there is no basis within the limitations of judicial review for disturbing the Commission's finding that the injury was not by accident arising out of and in the course of the employment. The judgment of the circuit court should therefore be reversed and the cause remanded with directions to the circuit court to enter a new judgment affirming the award of the Commission. It is so ordered.
ANDERSON and HOLMAN, JJ., concur.