STADLER FERTILIZER COMPANY *v.* BENNETT.

[No. 18,517.   Filed April 29, 1954.
Rehearing denied May 28, 1954.]

*Leigh L. Hunt,* of Fort Wayne, for appellant.

*Helmke, Philips & Beams,* of Fort Wayne, for appellee.

ROYSE, J.—Appellant appeals to this court from an award of the Full Industrial Board granting appellee compensation for the death of her husband as the result of an accident arising out of and in the course of his employment by appellant.

In substance, appellant contends here the evidence shows without contradiction appellee's decedent was not injured on appellant's premises or in a vehicle owned or operated by it. That decedent was driving his own vehicle when the fatal accident occurred. That transportation was provided for him by appellant to and from Geneva, Indiana, which he did not use. That there is no evidence from which an inference could be drawn that he was going to the plant in Fort Wayne or that there was any occasion for him to go to said plant. Appellant contends, therefore, decedent's injuries did not arise out of or in the course of his employment.

The question presented requires a consideration of the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to appellee. There is little dispute in the evidence. The conflict arises over the different construction placed on the evidence and the reasonable inferences to be drawn therefrom by the parties.

The evidence herein would reasonably support the following conclusions pertinent to a decision of the question presented:

Appellant was engaged in the manufacture of fertilizer at Fort Wayne. In the course of its work it employed truck drivers who went into the country and picked up carcasses of dead animals which were delivered by these drivers to the plant in Fort Wayne.

It maintained a loading station at Geneva, Indiana, which is about forty-five miles south of Fort Wayne. Two truck drivers worked out of this station, one a Mr. Lough worked in the vicinity of Winchester; the other a Mr. Beeler in the vicinity of Geneva. The truck drivers were paid a straight salary and worked about thirteen hours a day, six days a week. About 3:30 to 4:00 P. M. each day the drivers working from the Geneva station would meet there and take their loads to Fort Wayne. On some occasions both trucks were taken to Fort Wayne. On others, the loads were placed in one truck and only one of the drivers would take the combined load into the factory. The Company provided transportation to its drivers between Fort Wayne and Geneva.

Decedent had been in the employment of the Company for many years. Company officials regarded him as a faithful employee who required little supervision, knew his job, and at times acted on his own initiative in his work for appellant. About two weeks prior to August 16, 1952, decedent was assigned by appellant to the Geneva station to take the place of Beeler who was on vacation. He was expected to use a Company truck to go back and forth between Fort Wayne and Geneva.

While Beeler was on vacation the Company truck he used was taken to Fort Wayne for repairs. Apparently on the night of August 14th decedent was driven to Fort Wayne by Mr. Lough in the Company truck with a load of carcasses. Lough returned to his home at Geneva in this truck. On the morning of August 15th decedent drove his wife's pick-up truck to Geneva. On the evening of that day Lough was ill and requested decedent to take the load into Fort Wayne in the Company truck that was being used at Geneva while Beeler's truck was repaired. Decedent left his wife's

truck at Geneva that night. On the morning of the 16th he drove the truck Beeler used to Geneva. Apparently he used this truck in his work that day. He returned to the loading station at Geneva about 3:30 P. M. His load was transferred to Lough's truck because they wanted Beeler's truck at the station Monday morning when Beeler returned to work. He told several of his fellow employees when he finished work that day he was all prepared to start on his vacation. Lough drove the combined loads to Fort Wayne. Decedent's fellow employees at Fort Wayne said that during the two weeks preceding his death he normally came to the Fort Wayne plant at the close of the day at around 6 P. M. He had on other occasions during this period used his wife's truck. Decedent took his wife's truck and started from Geneva to Fort Wayne. He was killed in an accident about seven miles south of Fort Wayne.

As a general rule, accidents occurring on the way to or from the place of employment are not compensable because they do not arise out of and in the course of the employment. However, there are exceptions to this rule. One such exception is where transportation to or from work is furnished by the employer. It is undisputed in this case appellant agreed to furnish transportation to decedent between Geneva and Fort Wayne.

But appellant contends this exception is not applicable because decedent was riding in his own auto and not in one provided by the Company. In support of this contention it relies on the case of *Boyd* v. *Chase, et al.* (1929), 89 Ind. App. 374, 166 N. E. 611. In that case appellant was a cement contractor and decedent, one Chase, was one of his employees. It was the custom of the employees to assemble at appellant's residence and go from there to work in appellant's truck, except that one or more employees sometimes rode with another

employee named Wood in his car. On the day in question Chase, on his way to the employer's residence, stopped to take out some forms which had been used in construction work by appellant. Wood came by and picked Chase up and drove him to the employer's residence. Wood was directed to pick up another employee. Chase voluntarily went with Wood and was killed on this trip. The Board awarded compensation and on appeal this court reversed the award on the ground there was no evidence of an implied contract between the employer and Chase by the terms of which Chase was to be taken to work in Wood's automobile.

We agree with Professor Small in his Workmen's Compensation Law of Indiana, p. 173, §7.7, notes 65 and 67, that this is a poorly reasoned case. We believe, with Professor Small, the better rule is stated in the case of *Matlon et al.* v. *Matlon et al.* (1931), 92 Ind. App. 350, 354, 175 N. E. 369, where, speaking on this question, this court said:

> "Here the employers ordered and acquiesced in the employees using a means of transportation from one job to another while being paid for such time. The employees, owing their employers the duty of reporting for the work at the place designated, proceeded toward that place, and while traveling a well-recognized route were injured. The Industrial Board found from ample evidence the five material facts and made an award thereon, and we find no reversible error. Even granting that there had been no specific order given to use this particular means of transportation, the *acquiescence of the employers has been held sufficient since the acquiescence abrogates specific instructions. Alberta Contracting Corporation* v. *Santomassimo* (1930), 150 Atl. (N. J.) 830." (Our emphasis.)

Applying the foregoing rule to this case, it seems to us the Board could have reasonably inferred dece-

dent's use of his own personal vehicle as a means of returning from Geneva to Fort Wayne was necessary to suit the convenience of his employer, because he was required to leave the Company truck at Geneva in order to drive Mr. Beeler's truck to Fort Wayne Thursday evening so that Beeler's truck could be left at Fort Wayne for repairs on Friday. This left decedent without Company transportation back to Geneva on Friday. Hence, he was forced to use his own vehicle to get to Geneva that day. Appellant knew this and acquiesced in his action. On Friday evening he had to haul Lough's daily load to Fort Wayne, requiring the use of the Company truck he had left at Geneva on Thursday evening. This truck decedent left at Fort Wayne, and on Saturday morning he returned Beeler's repaired truck to Geneva and left it for Beeler's use the following Monday. Thus, decedent had no choice but to return to Fort Wayne Saturday evening in his own vehicle, else leave it at Geneva indefinitely when he had taken it there originally because the Company vehicle was not available. In view of the fact that during the period he was working at Geneva he regularly returned to appellant's Fort Wayne plant before going home, it could reasonably be inferred this was his purpose on the day of the accident.

We are of the opinion there is sufficient evidence to sustain the award of the Industrial Board of Indiana.

Award affirmed, with usual penalty.

NOTE.—Reported in 119 N. E. 2d 26.